United States District Court | Southern District of Texas

United States District Court
Southern District of Texas
**ENTERED**
March 22, 2018
David J. Bradley, Clerk

| | | |
|---|---|---|
| Ricky A. Johnson, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-17-1714 |
| | § | |
| Aramark, | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1.  *Background.*

Ricky A. Johnson is black. He began working as a grill cook for Aramark Corporation on December 4, 2013, at the University of Houston – Clear Lake in Houston. Johnson's responsibilities included preparing the grill station, cooking the food, and cleaning everything after the shift.

On March 1, 2016, Johnson submitted a written complaint to human resources about how Aramark gave his Hispanic co-worker a raise of ten-cents per hour; Aramark did not raise Johnson's pay.

William Leyendecker was the food service director and manager. Leyendecker and Johnson got into an argument on March 16th. Leyendecker told Johnson to do something and he became confrontational. In his tantrum, Johnson told Leyendecker that he was unfairly treated because Agapita Ortiz got a raise and he did not.

During the altercation, Leyendecker asked Johnson if he wanted to go home. Johnson said yes and left before his shift ended. Johnson returned the next day and resumed his responsibilities.

Aramark sent Johnson a coaching notice on April 12th about the exchange between Leyendecker and him. Johnson then filed his first charge of employment discrimination with the Equal Employment Opportunity Commission on April 28th. Johnson claimed racial discrimination and retaliation. The Commission dismissed his complaint.

A. *Summer Schedule.*

Most Aramark employees in the education division are on leave between mid-May through mid-August. The University is open on a limited schedule. In the summer, the dining room closes at 2:00 p.m. Monday through Thursday and on Fridays at noon. The University is closed on Saturday and Sunday. Employees may ask to work the reduced schedule.

In early May 2016, Leyendecker scheduled a meeting with the workers to discuss their availability during the summer because summer hours would begin on May 16. At the meeting, Leyendecker asked the workers to write their availability for May through September on the notepad being passed around. Johnson was there, but he did not write anything on the notepad nor did he otherwise give Leyendecker a new written schedule.

Johnson last wrote his availability in fall 2015. In that update, Johnson's availability was from Monday through Friday afternoon. Aramark relied on his fall 2015 availability to schedule the summer. Because Johnson's availability on file conflicted with the summer schedule, Aramark did not assign him.

B. *Confusion.*

Johnson's mother died at the beginning of May 2016. Johnson asked for bereavement leave from May 4 through May 17, and Aramark approved it. Johnson returned to work on May 18th, two days after the summer schedule began. Although Aramark had not scheduled Johnson to work, he helped Aramark with catering for three hours.

Shortly after he finished that day, Johnson asked Leyendecker why he was not on the summer schedule. Leyendecker explained that (a) he never received Johnson's availability at the meeting, and (b) his last availability from fall 2015 conflicted with summer hours. Johnson left and did not return to work for the rest of the summer.

Johnson filed a second charge of discrimination on June 7, 2016. His complaint says that Aramark retaliated against him for filing his first complaint by not scheduling him to work in the summer. The Commission notified him of his right to sue on March 10, 2017.

C. *Communication.*

Leyendecker called Johnson on August 20 and August 22 to ask about Johnson's fall 2016 availability. He did not return the calls. Leyendecker then wrote Johnson on September 28 saying that he had tried to call him twice. Leyendecker explained in the letter that workers on summer leave are expected to tell management in mid-July whether they will return to work in the fall. He asked Johnson to call him immediately. Leyendecker also said that Johnson's

position as a grill cook remained open; however, if Aramark did not hear from Johnson by October 5, it would assume Johnson resigned his position. Johnson never called, wrote, or appeared at work.

2. *Wage Discrimination.*

Johnson says that Aramark did not give him a ten-cent raise like Agapita Ortiz, a Hispanic woman, because he is black. For wage discrimination, Johnson must show that he was paid less than a person who had the same job responsibilities; his circumstances must be nearly identical than to those of a better-paid employee.

Ortiz and Johnson worked as grill cooks at the same time in 2013, but Johnson has not shown how his circumstances are parallel to Ortiz's. Johnson made $8.50 and admitted that Ortiz always earned $1.40 more than he did. Ortiz earns $9.90 hourly, but Johnson concedes that he knows nothing about Ortiz's qualifications, experience, or why Aramark chose to pay her more. He also did not formally complain that the raise was race based.

With the absence of facts, Johnson is precluded from arguing these claims because (a) they were not included in his first complaint to the Commission, and (b) they relate to events that happened more than 300 days before he filed his charge.[1] Johnson filed his first charge on April 28, 2016, but he never complained about differing compensation during the three years he worked for Aramark. He now complains about Aramark giving Ortiz a ten-cent raise.

3. *Racial Discrimination.*

To establish racial discrimination, Johnson must show that he is a member of a protected class, was qualified for his position, was adversely affected in his job, and was treated less favorably than similar workers outside his class.[2]

Johnson cannot show an adverse employment action. Leyendecker repeatedly called and wrote to Johnson to try and get his fall availability. Leyendecker also offered to keep Johnson's job open until October. Johnson made his decision to resign by abandonment; he did not return phone calls, respond to Leyendecker's letter, or go back to work.

Johnson has not shown that Aramark treated him differently because he is black. When Johnson worked for Aramark, it also hired Ortiz, a Hispanic woman, and two Indian students.

---

[1] 42 U.S.C. § 2000e-5(e)(1).

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Johnson says he did not know of other Aramark employees who received a raise; he only identified Ortiz.

Even assuming Leyendecker is anglo, Johnson has no facts to show that Leyendecker favored Ortiz because she is Hispanic or that Aramark used race in its decision to give Ortiz a raise. Additionally, no evidence suggests that Aramark did anything other than reward Ortiz for her performance.

4. *Retaliation.*

To prevail on a claim of retaliation, Johnson must prove that (a) he engaged in a protected activity, (b) he suffered an adverse employment action, and (c) Aramark retaliated against him because of the protected activity.[3]

Johnson argues that Aramark retaliated against him by not scheduling him to work because he filed his first complaint. Aramark did not; Aramark did not schedule Johnson to work in the summer because he did not give it an updated availability. Aramark relied on Johnson's fall 2015 availability when it created its summer crew. Johnson's availability precluded him from working the limited schedule. Even when Johnson did not return Leyendecker's telephone calls or respond to his letter, Aramark offered to keep Johnson's position open and let him return to work anytime until October 5, 2016. Johnson chose to resign.

5. *Conclusion.*

The only thing Johnson has shown is that no disinterested, fully-informed person could reasonably conclude that Aramark racially discriminated or retaliated against him. Johnson will take nothing from Aramark.

Signed on March 21, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[3] 42 U.S.C. § 2000e-3(a)(1).